Facts and Procedural History
Robert B. Embry is a licensed dentist who practices general dentistry through his professional corporation, Robert B. Embry, D.D.S., P.C. Dr. Embry provided dental care to Stephanie Sherrer on September 2, 2003, and discovered that two of her teeth were abscessed. Dr. Embry placed Sherrer on a seven-day course of penicillin and then extracted the two teeth on September 8, 2003. That day, Dr. Embry prescribed pain medication for Sherrer, but he did not prescribe any further antibiotics.
The next day, Sherrer telephoned Dr. Embry's office because she was experiencing severe pain and swelling in her jaw. Dr. Embry prescribed a stronger pain medication for Sherrer, but her condition worsened. On September 10, 2003, Sherrer returned to Dr. Embry's office, and, although he was not present, he arranged for Sherrer to be seen by Dr. Harlan Knight, another dentist. Dr. Knight saw Sherrer and referred her to Dr. Christopher Nester, an oral surgeon. The site of the extraction had become infected, and Dr. Nester operated on Sherrer's jaw to relieve the swelling and to treat the infection.
Sherrer and her husband, James Sherrer, sued Dr. Embry and his professional corporation (hereinafter sometimes referred to collectively as "Dr. Embry"), alleging dental malpractice, and alleging specifically that in treating Sherrer, Dr. Embry had breached the applicable standard of care.[1] Dr. Embry moved for a summary judgment. The Sherrers filed an opposition to Dr. Embry's summary-judgment motion, attaching the affidavit and curriculum vitae of their expert witness, Dr. James R. Stilwell. Dr. Stilwell is *Page 81 
a medical doctor licensed in Alabama; he obtained his medical degree in 1956 and practiced plastic and reconstructive surgery before retiring in 2000. According to his affidavit, Dr. Stilwell maintained a "limited medical practice in 2001 through 2003."
Dr. Embry moved to strike Dr. Stilwell's expert testimony as to the standard of care on the ground that Dr. Stilwell "does not meet the requirements of a `similarly situated health care provider' as set forth in § 6-5-548(b)[, Ala. Code 1975,]" and "is not qualified to offer expert testimony against Dr. Robert B. Embry." The trial court granted Dr. Embry's motion to strike Dr. Stilwell's affidavit testimony. The trial court then noted that "[b]ecause [the Sherrers'] proffered standard of care expert testimony has been struck, [Dr. Embry's] prima facie showing that [he] met the applicable standard of care remains unchallenged." The trial court granted Dr. Embry's motion for a summary judgment. The Sherrers appeal the summary judgment in favor of Dr. Embry and specifically challenge the trial court's decision to grant Dr. Embry's motion to strike Dr. Stilwell's testimony.
 Issue
The issue presented to this Court is whether the trial court erred in granting Dr. Embry's motion to strike Dr. Stilwell's affidavit testimony and thus whether the trial court erred in entering a summary judgment for Dr. Embry on the basis that the Sherrers could offer no expert testimony as to the applicable standard of care.
 Standard of Review
"Generally, the question of whether a witness is qualified to give expert testimony is a question left to the discretion of the trial court and the court's ruling will not be disturbed unless it is found that the trial court abused its discretion."Craig v. Borcicky, 557 So.2d 1253, 1255 (Ala. 1990) (citing Bell v. Hart, 516 So.2d 562 (Ala. 1987)).
 "The standard of review applicable to a summary judgment is the Same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant."
Brigman v. Dejute, 593 So.2d 51, 53 (Ala. 1991).
 Analysis
Section 6-5-548, Ala. Code 1975, a part of the Alabama Medical Liability Act, provides that in a medical-malpractice action against a health-care provider,
 "(a) . . . the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.
 "(b) . . . [A] `similarly situated health care provider' is one who meets all of the following qualifications:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same discipline or school of practice.
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.
 ". . . . *Page 82 
 "(e) . . . A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a `similarly situated health care provider' as defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider only if he or she is certified by the same American board in the same specialty."
Dr. Stilwell is qualified to testify as an expert witness in this case only if he is a "similarly situated health care provider" to Dr. Embry. § 6-5-548(e), Ala. Code 1975. To be qualified as a "similarly situated health care provider," Dr. Stilwell must meet each of the three requisites of §6-5-548(b), Ala. Code 1975 ("a `similarly situated health care provider' is one who meets all of the following qualifications").
First, Dr. Stilwell must be "licensed by the appropriate regulatory board or agency of this or some other state." §6-5-548(b)(1), Ala. Code 1975. Because Dr. Embry is licensed as a general dentist and was sued in that capacity, "the appropriate regulatory board or agency" by which an expert witness must be licensed to qualify as a similarly situated health-care provider and testify against him is a dental board of Alabama or some other state. Dr. Stilwell is licensed to practice medicine; he is not licensed to practice dentistry. Thus, he is not licensed by the "appropriate regulatory board" of Alabama or another state. Craig v. Borcicky, 557 So.2d at 1255 ("The general rule is that a physician of one school of medicine is incompetent to testify in a malpractice case against a physician of another school of medicine." (citing Wozny v. Godsil474 So.2d 1078 (Ala. 1985))). Thus, the Sherrers have not demonstrated that Dr. Stilwell satisfies the first requisite to qualify as a "similarly situated health care provider" to Dr. Embry. § 6-5-548(b)(1), Ala. Code 1975.
The second requisite is that Dr. Stilwell be "trained and experienced in the same discipline or school of practice" as Dr. Embry. § 6-5-548(b)(2), Ala. Code 1975. Dr. Embry is trained as a general dentist and is licensed to practice dentistry in Alabama. The Sherrers state that Dr. Stilwell "had training for a period of five years with a dentist/oral surgeon/medical doctor" and contend that his "knowledge of extracting of teeth, and treatment of infection in the human jaw, and subsequent treatment for the same is equal to or superior to that of a general dentist."[2] Sherrers' brief at 10. Dr. Embry attended dental school, is trained in the practice of general dentistry, and has been practicing general dentistry since 1999; Dr. Stilwell did not attend dental school, is not trained in the practice of general dentistry, and apparently has never practiced dentistry. It is true that "[t]he Medical Liability Act does not require that [Dr. Embry] and [Dr. Stilwell] have identical training, experience, or types of practice, or even the same specialties"; however, because general dentistry is the field in which Dr. Embry was practicing when he allegedly breached the standard of care, resulting in *Page 83 
injury to Stephanie Sherrer, Dr. Stilwell's training and experience must include general dentistry if it is to satisfy this second requisite of a "similarly situated health care provider." Rodgers v. Adams, 657 So.2d 838, 842
(Ala. 1995).
The record establishes that Dr. Stilwell is a medical doctor who practiced plastic and reconstructive surgery; the record does not establish that Dr. Stilwell's training includes general dentistry. Because Dr. Stilwell does not have training and experience in the field of general dentistry, the Sherrers have not established the second requirement for a "similarly situated health care provider." § 6-5-548(b)(2), Ala. Code 1975; Ex parte Waddail, 827 So.2d 789, 795 (Ala. 2001) ("The second criterion requires that the [proffered expert witness] have training and experience in the same field [as the defendant doctor].").
The third requisite is that Dr. Stilwell have "practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred." Ala. Code 1975, § 6-5-548(b)(3). Because Dr. Embry's alleged breach of the standard of care occurred in September 2003, Dr. Stilwell must have practiced dentistry during the period from September 2002 to September 2003. However, there is no evidence indicating that Dr. Stilwell has ever practiced general dentistry, and, according to his own curriculum vitae, Dr. Stilwell retired from the private practice of plastic and reconstructive surgery in 2000. Dr. Stilwell notes in his affidavit that "a portion of my training was with Dr. Reed Dingman, a dentist/oral surgeon/medical doctor during the period of 1960-1962 concerning the treatment of the human jaw, and infections in the human jaw, and I have had training and experience in extraction of teeth as relates to treatment of the human jaw." This experience, however, does not constitute the practice of general dentistry. Further, although Dr. Stilwell maintains that he "continued to have a limited medical practice in 2001 through 2003," he does not explain the nature of this "limited medical practice" and whether that practice was at all related to dentistry. Thus, the Sherrers have failed to demonstrate that the trial court exceeded its discretion in concluding that Dr. Stilwell failed to meet the third requirement for qualifying as a "similarly situated health care provider."
To be admissible, an affidavit offered in support of a summary-judgment motion must "show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), Ala. R. Civ. P. Dr. Stilwell's affidavit does not demonstrate that he satisfies the requirements for qualifying as a "similarly situated health care provider" under §6-5-548(b), Ala. Code 1975. Thus, the trial court did not exceed its discretion in excluding his expert testimony. Because Dr. Stilwell's affidavit is not admissible, the Sherrers have failed to rebut Dr. Embry's prima facie showing that he met the applicable standard of care in his treatment of Stephanie Sherrer. Thus, the trial court did not err in entering a summary judgment in favor of Dr. Embry.
We hold that the trial court did not err in striking Dr. Stilwell's affidavit, and we therefore affirm the summary judgment in favor of Dr. Embry.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] James Sherrer asserted a loss-of-consortium claim.
[2] If Dr. Stilwell's medical knowledge as a medical doctor is in fact superior to that of a general dentist, then the standard of care applicable to him and with which he is familiar may well differ from that applicable to a dentist practicing general dentistry. *Page 84